762 F.2d 1007
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CLAUDIA T. ELDRIDGE, PLAINTIFF-APPELLANT,
v.
PAUL N. CARLIN, POSTMASTER GENERAL OF THE UNITED STATES
POSTAL SERVICE, DEFENDANT-APPELLEE.
 NO. 84-5260
 United States Court of Appeals, Sixth Circuit.
 3/27/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
 BEFORE: MARTIN and JONES, Circuit Judges, and PORTER, District Judge.*
 PER CURIAM.
 
 
 1
 Appellant appeals the district court's order, which dismissed her complaint. Upon consideration of the issues presented by this appeal, we affirm.
 
 
 2
 * The United States Postal Service (Postal Service) offers three types of postal clerk positions: (1) part-time regular clerk; (2) part-time flexible clerk; and (3) full-time regular clerk. A part-time regular clerk is assigned to a regular schedule of less than forty hours a week. A part-time flexible clerk is available to work flexible hours as assigned during the course of a week. A full-time regular clerk is assigned regular schedules consisting of five, eight hour days a week.
 
 
 3
 Only part-time flexible clerks are eligible to become full-time regular. A part-time regular clerk, therefore, cannot be reclassified as a full-time regular clerk. Instead, a part-time regular clerk, who seeks to become a full-time regular clerk, must first become a part-time flexible clerk. Hence, there has been no promotion from the position of part-time regular clerk to the position of full-time regular clerk.
 
 
 4
 According to Article XXXVII Sec. 2(E)(4) of the collective bargaining agreement between the Postal Sevice and the American Postal Workers Union (APWU) reclassification from the position of part-time regular clerk to the position of part-time flexible clerk results in the loss of any seniority accumulated as a part-time regular clerk. Nevertheless, in 1968 a male part-time regular clerk, George Gentry, retained his three months seniority when he became a part-time flexible clerk. Yet, appellant, Claudia Eldridge,[1] a female part-time regular clerk in the Cookeville Post Office, was not allowed to retain her seniority[2] when she was involuntarily reclassified[3] as a part-time flexible clerk. Her seniority almost equalled twelve years.
 
 
 5
 In response to Eldrige's involuntary reclassification, Johnny F. Thomas, District Manager of the Postal Service, sent a letter dated March 26, 1981 to Len K. Mahler, Postmaster Cookeville, Tennessee. Thomas' letter stated the 'Eldrige was subjected to disparate treatment when she was assigned a new period of seniority.' Thomas also sent a letter dated March 27, 1981 to Eldridge and thereby informed her of his disparate treatment theory.
 
 
 6
 On January 22, 1980, Eldridge filed a Step 1 grievance and alleged that her involuntary reclassification was a violation of Article XXXVII of the collective bargaining agreement. When the grievance was denied by the Postal Service on January 23, 1980, the APWU appealed to Step 2. The Postal Service denied the grievance at Step 2 and the APWU appealed to Step 3 on February 11, 1980. The Postal Service reaffirmed its position and, therefore, denied the Step 3 appeal on March 10, 1980.
 
 
 7
 The Union appealed to regional arbitration under the provisions of Article XV of the collective bargaining agreement. Prior to arbitration, the Postal Service and the APWU signed a document on April 10, 1981, which provided that the Postal Service and APWU mutually agreed that Eldridge should be returned to her former position as a part-time regular clerk without loss of seniority. Eldridge filed no action against the APWU regarding its representation of her grievance.
 
 
 8
 On February 24, 1980, Eldridge filed a timely informal complaint of sex discrimination with the Postal Service. That complaint was her first allegation of discrimination against the Postal Service. On June 17, 1980, Eldridge filed a timely formal complaint of sex discrimination with the Postal Service. A hearing on her formal complaint was held on July 15, 1981, before Complaints Examiner Parsons, who issued a Recommended Decision on December 14, 1981. The Postal Service rejected the Recommended Decision on January 13, 1982 and on November 22, 1982, the Office of Review and Appeals of the Equal Employment Opportunity Commission affirmed the Postal Service's final decision.
 
 
 9
 After she received her right to sue letter Eldridge filed a complaint against the Postmaster General of the United States Postal Service, Paul N. Carlin,[5] and alleged disparate treatment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2002e-2000e-17. According to Eldridge, her involuntary reclassification from the position of part-time regular clerk to the position of part-time flexible clerk violated 42 U.S.C. Sec. 2000e-2(a) because she was reclassified on the basis of gender. In support, she directed attention to Thomas' letters (of March 26, 1981 and March 27, 1981), Gentry's reclassification and retention of seniority, and the hiring of over thirty males into the position of part-time flexible clerk since her hiring in 1968.
 
 
 10
 The district court dismissed her action after a bench trial. Eldridge's motion to amend was later denied. She now appeals.
 
 B
 
 11
 Appellate review of the district court's findings of fact is controlled by the 'clearly erroneous' rule. Fed. R. Civ. P. 52(a). Consequently, '[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge . . . the credibility of . . . witnesses.' Id. 'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). This Court may, however, freely review the district court's legal conclusions, ultimate findings of fact, and mixed questions of fact and law. Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 143, 143 n.19 (6th Cir. 1983).
 
 
 12
 The district court's dismissal of Eldridge's action was predicated upon the following reasons. First, the evidence concerning Gentry's reclassification and seniority retention was merely relevant as background evidence under United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977). We agree. Evans explicitly states that actions not subject to a timely charge are considered to have occurred before Title VII was enacted. See id. Evans, however, does not simply disregard those actions but instead considers them to be relevant as 'background evidence' only. Id. Consequently, the district court placed Gentry's reclassification and seniority retention in the proper evidentiary perspective.
 
 Reason #2
 
 13
 Second, the district court reasoned that Eldridge had not been placed in a part-time flexible position earlier because Mahler presumed that she was not interested in becoming a part-time flexible employee and the veteran's preference increased the prevalence of males in the selection process. According to the district court, Mahler made that presumption because Eldridge's family life would have been subject to unpredictable hours and because she never asked him to be reclassified. Instead, Eldridge asked Hunter, her immediate supervisor, to reclassify her when only Mahler was responsible for job assignments.
 
 
 14
 The district court's recitation of the facts is accurate. The testimony at trial established that Eldridge had a disabled husband, young children, had to drive over 100 miles to work, and that she took classes towards a degree by attending courses in the morning, before work. Mahler testified that he knew of Eldridge's family situation. He also testified, however, that later he knew that Eldridge's husband had died, that her children were growing, and that she moved closer to the Cookeville Post Office.
 
 Reason #3
 
 15
 Third, the district court reasoned that although Eldridge's treatment, in relation to Gentry, was 'disparate' that disparate treatment was not unlawful. According to the district court, Gentry's seniority retention, unlike Eldridge's, made no difference to the seniority list because the period he retained was insignificant. Moreover, Gentry's seniority retention, unlike Eldridge's, was not contractually precluded. We agree. Article XXXVII of the collective bargaining agreement prevents Eldridge's retention.
 
 Reason #4
 
 16
 Fourth, the district court reasoned that Eldridge's argument concerning the inapplicability of Article XXXVII 'misses the point.' Eldridge argued that XXXVII should not apply to her reclassification because it refers to individuals who are voluntarily reclassified to the position of part-time flexible clerk. We agree with the district court, however. The action is not one sounding in contract. Moreover, even if Article XXXVII does not apply to Eldrige's reclassification, then she has failed to prove motive (gender animus) because Carlin interpreted Article XXXVII in good faith. Hence, the negative side to Eldridge's argument rests upon a good faith contractual interpretation. Therefore, Eldridge's involuntary transfer would not have been, as she contends, based upon gender.
 
 Reason #5
 
 17
 Fifth, the district court appeared to reason that it would be improper to base establishment of a prima facie case merely upon Mahler's 'disparate treatment' statements. The court further reasoned that even if these statements set forth a prima facie case, Carlin proferred legitimate, nondiscriminatory rationale which Eldridge failed to prove pretextual. Once again, we agree with the district court. Eldridge has not established a prima facie case of gender discrimination. As Eldridge notes in her brief, only she testified on her behalf. 'There was little cross examination and very little rebuttal.' As Eldridge does not note, she failed to introduce evidence, beyond her own testimony, the Gentry incident, and Thomas' letters to establish gender discrimination; and, the only evidentiary value of Gentry's reclassification and seniority retention is that of background material. Id. Moreover, Thomas' letters which were based upon his comparative analysis of the Gentry incident and Eldridge's reclassification and lack of seniority retention, failed to recognize the true evidentiary value of the Gentry incident.
 
 
 18
 Undoubtedly Eldridge attempted to established her prima facie case upon her own testimony. The district court, however, did not credit her testimony. That credibility determination was within the district court's power. Fed. R. Civ. P. 52(a).
 
 
 19
 Eldridge, however, argues that her counsel's trial strategy was prejudicially altered by several statements made by the trial judge which tend to suggest that he believed Eldridge's side of the lawsuit. Because of those statements, Eldridge argues that her counsel had 'only' her testify in her behalf, cross examined other witnesses 'little,' and engaged in 'little rebuttal.'
 
 
 20
 Although we sympathize with Eldridge, she admits to finding no case law to support her request for new trial. Moreover, we find it hard to believe that counsel would forego placing evidence in the record to support the lawsuit merely because the judge appeared to be less than a fair and impartial decisionmaker. Nevertheless, we do think that the trial judge's sarcasm and statements of disbelief were unnecessary to the proper conduct of a trial. Those statements, however, in no way warranted counsel's altering trial strategy. Evidence is that which is necessary to set forth a prima facie case, not the judge's appearance of bias.
 
 
 21
 We, therefore, AFFIRM, the judgment of the district court.
 
 
 
 *
 The Honorable David S. Porter, Senior District Judge, United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Eldridge was hired on April 18, 1968 by the Postal Service's predecessor, the United States Post Office Department, to be an Hourly Rate Regular Distribution Clerk, the equivalent of a part-time regular clerk. When she was hired, Eldridge knew of the promotion progression schedule
 
 
 [2]
 When she was first hired, Eldridge continuously asked her immediate supervisor to change classification to part-time flexible clerk. She, however, stopped asking after her first two years
 
 
 [3]
 On January 14, 1980, Eldridge received a letter from Postmaster L. K. Mahler, which informed her that as of January 26, 1980 she would no longer be a part-time regular clerk. Instead, she would become a part-time flexible clerk. The stated rationale was that her involuntary reclassification would provide additional flexibility in the Cookeville Post Office. On January 21, 1980, Eldridge received another letter from Postmaster Mahler stating that she would start a new period of seniority as a part-time flexible employee on January 26, 1980
 
 
 [4]
 Article XXXVII Sec. 2(E)(4) of the collective bargaining agreement states:
 A part-time regular clerical employee who applies for and is changed to part-time flexible shall be placed at the foot of the part-time flexible roster and the changed employee shall begin a new period of seniority.
 
 
 [5]
 Eldridge's suit was originally filed against William Bolger; however, Carlin was substituted as the respondent when he replaced Bolger as Postmaster General